**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

CARLOS HERRERA,

    Petitioner,

vs.                                      No. CIV 24-0535 JB/JHR
                                              No. CR 15-4268 JB/JHR

UNITED STATES OF AMERICA,

    Respondent.

**<u>MEMORANDUM OPINION AND ORDER</u>**

**THIS MATTER** comes before the Court on the Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody, filed May 29, 2024 (CIV Doc. 1; CR Doc. 3749)("Motion"). Petitioner Carlos Herrera is a federal prisoner and is proceeding pro se. He asks the Court to vacate his conviction due to an alleged violation of his right to a fair trial, ineffective assistance of counsel, and a denial of due process. The Respondent the United States of America files the United States' Response to Defendant's Motion to Vacate Convictions Under 28 U.S.C. § 2255, filed September 8, 2025 (CIV Doc. 7)("Response"). Herrera does not file a reply. Having reviewed the parties' submissions and the record, the Court will dismiss the Motion with prejudice.

**<u>FACTUAL BACKGROUND</u>**

The Court takes its background facts from the Second Superseding Indictment, filed March 9, 2017 (CR Doc. 947)("Indictment"). This case deals with crimes that the Syndicato Nuevo Mexico ("SNM") allegedly committed through its members. See Indictment at 2. SNM operates in the District of New Mexico, and its members engage in acts of violence and other criminal activities, "including murder, kidnapping, attempted murder, conspiracy to manufacture/distribute

narcotics, and firearms trafficking." Indictment at 2. The SNM constitutes an enterprise "as defined in Title 18, United States Code, Section 1959(b)(2), that is, a group of individuals associated in fact that engaged in, and the activities of which affected, interstate and foreign commerce." Indictment at 2-3.

The SNM is a prison gang formed in the early 1980s at the Penitentiary of New Mexico ("PNM") as a result of a violent prison riot at the facility. See Indictment at 3. After the PNM riot, SNM expanded throughout the State's prison system and now has approximately 250 members, including "a 'panel' or 'mesa' (Spanish for table) of leaders who issue orders to subordinate gang members." Indictment at 3. SNM controls drug distribution and other illegal activities within the New Mexico penal system, but it also conveys orders to members outside the prison system. See Indictment at 3. Members who rejoin their communities after completing their sentences are expected to further the gang's goals: primarily the control and profit of narcotics trafficking. See Indictment at 3-4. Members who fail "to show continued loyalty to the gang [are] disciplined in various ways, [] includ[ing] murder and assaults." Indictment at 4.

The SNM also intimidates and influences smaller New Mexico Hispanic gangs to expand its power. See Indictment at 4. If another gang does not follow the SNM's demands, SNM will assault or kill one of the other gang's members to show its power. See Indictment at 4. The SNM's rivalry with other gangs also manifests in beatings and stabbings within the prison system. See Indictment at 4. The SNM engages in violence "to assert its gang identity, to claim or protect its territory, to challenge or respond to challenges, to retaliate against a rival gang or member, [and] to gain notoriety and show its superiority over others." Indictment at 4. To show its strength and influence, the SNM expects its members to confront and attack any suspected law enforcement informants, cooperating witnesses, homosexuals, or sex offenders. See Indictment

at 5.   To achieve its purpose of preserving its power, the SNM uses intimidation, violence, threats of violence, assaults, and murder.   See Indictment at 7.

The SNM members' conspiracy to murder high-ranking New Mexico Corrections Department officials caused an inquiry by the Federal Bureau of Investigation, which gave rise to Herrera's underlying criminal case.   See United States v. Garcia, 221 F. Supp. 3d 1275, 1277 (D.N.M. 2016)(Browning, J.).   The investigation revealed that in March of 2014, Herrera, acting in concert with others, allegedly conspired to murder and did murder an individual.   See Indictment at 12-13.   Herrera was charged with Counts 6 and 7 of the Second Superseding Indictment, Violent Crimes in Aid of Racketeering Act (VICAR), and Conspiracy to Murder and Murder, in violation of 18 U.S.C. §§ 1959(a)(1) and (a)(5).   Indictment at 12-13.   Thirty-one total defendants were named, and the Court severed the case into two trials.   See Sealed Memorandum Opinion and Order, filed June 9, 2017 (CR Doc 1187).   On March 12, 2017, a jury returned its verdict finding Herrerra guilty of both counts.   See Jury Verdict at 2 (CR Doc. 1937).   Herrara was sentenced to a total term of life imprisonment.   See Judgment at 3, filed June 27, 2019 (CR Doc. 2725).

Herrera appealed his conviction, and, on October 27, 2022, the United States Court of Appeals for the Tenth Circuit affirmed.   United States v. Herrera, 51 F.4th 1226, 1289 (10th Cir. 2022)("Herrera").   On June 23, 2023, the Supreme Court of the United States denied Herrera's petition for writ of certiorari.   Herrera v. United States, 143 S. Ct. 2636, 216 L. Ed. 2d 1224 (2023).

On May 29, 2024, Herrera filed the instant Motion seeking to vacate his conviction and sentence.   See Motion at 13-16.   The Motion asserts three grounds for relief: (i) Claim 1 the District Court deprived Herrera of a fair trial when it denied his motions for a continuance after he

was appointed a new attorney; (ii) Claim 2 counsel was ineffective because a pretrial motion was not filed to contest whether VICAR was constitutional under the Commerce Clause; and (iii) Claim 3 the government denied him due process by its delay in producing information and the District Court committed error by delaying severance.   The United States filed the Response, and Herrera did not file a Reply.

## LAW REGARDING 28 U.S.C. § 2255 HABEAS RELIEF

Section 2255 provides:

> A prisoner in custody under a sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a).   The defendant must file the initial motion under 28 U.S.C. § 2255 with the court that imposed the sentence for that court's consideration.   See Browning v. United States, 241 F.3d 1262, 1264 (10th Cir. 2001).   Habeas Corpus Rule 4(b) states: The judge who receives the motion must promptly examine it.   If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party.   Habeas Corpus Rule 4(b).

Section 2255 further provides that a United States Court of Appeals panel must certify a second or successive motion in accordance with § 2244 to contain: (i) newly discovered evidence that would be sufficient to establish by clear-and-convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or (ii) a new rule of constitutional law that previously was unavailable and the Supreme Court made retroactive to cases on collateral review. See 28 U.S.C. § 2255(h).   Section 2244 requires that, before a second or successive application is filed in the district court, the applicant shall move the appropriate court of appeals for an order

authorizing the district court to consider the application.  See 28 U.S.C. § 2244(b)(3)(A).  A district court lacks jurisdiction to consider a second or successive motion absent the requisite authorization.

### LAW REGARDING ISSUES RAISED ON DIRECT APPEAL

Claims that have already been addressed and disposed of on direct appeal are generally precluded from review in a § 2255 motion.   See United States v. Warner, 23 F.3d 287, 291 (10th Cir. 1994)(refusing to consider issues under § 2255 that were "previously considered and disposed of . . . on direct appeal"); United States v. Prichard, 875 F.2d 789, 791 (10th Cir. 1989)("Absent an intervening change in the law of a circuit, issues disposed of on direct appeal generally will not be considered on a collateral attack by a motion pursuant to § 2255."); United States v. Wade, No. 09-4063, 342 Fed. Appx. 375, 377, 2009 WL 2502080 (10th Cir. Aug. 18, 2009)(unpublished)("The district court was correct to reject this claim, inter alia, because we had previously rebuffed it on direct appeal.")(citations omitted); United States v. Varela-Ortiz, No. 06-2057, 189 Fed. App'x 828, 830, 2006 WL 2076811 (10th Cir. July 27, 2006)(unpublished)("Because we already disposed of this issue on direct appeal, [petitioner] may not raise it again in a § 2255 petition.")(citations omitted).

Additionally, "Section 2255 motions are not available to test the legality of matters which should have been raised on direct appeal."   Warner, 23 F.3d at 291 (citing United States v. Cook, 997 F.2d 1312, 1320 (10th Cir. 1993)).   The only exception is a habeas claim for ineffective assistance of counsel, which is exempt from the direct-appeal requirement.   See United States v. Erickson, 561 F.3d 1150, 1170 (10th Cir. 2009).   "A defendant's failure to present an issue on direct appeal bars him from raising the issue in his § 2255 motion, unless he can show cause excusing his procedural default and actual prejudice resulting from the errors of which he

complains, or can show that a fundamental miscarriage of justice will occur if his claim is not addressed." Warner, 23 F.3d at 291. To establish cause, a petitioner must demonstrate some external impediment which prevented the claims from being raised. See Murray v. Carrier, 477 U.S. 478, 488 (1986).

## LAW REGARDING INEFFECTIVE ASSISTANCE OF COUNSEL

Defendants have a constitutional right to effective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 686 (1984). The right guarantees not the best counsel but a competent one. Strickland v. Washington, 466 U.S. at 686. To demonstrate ineffective assistance a petitioner must show his counsel's performance fell below an "objective standard of reasonableness" and prejudiced him by creating a reasonable probability the trial's outcome would have differed with better counsel. Strickland v. Washington, 466 U.S. at 688, 694. Courts may address either the "performance" prong or the "prejudice" prong first and failure to demonstrate either will dispose of the petitioner's claim. Byrd v. Workman, 645 F.3d 1159, 1168 (10th Cir. 2011).

The performance prong is demanding, giving considerable deference to the discretion and strategy of counsel such that their decisions "'must have been completely unreasonable, not merely wrong.'" Byrd v. Workman, 645 F.3d at 1168 (quoting Hooks v. Workman, 606 F.3d 715, 723 (10th Cir. 2010)). The failure of counsel to attempt meritless arguments does not qualify as ineffective assistance. United States v. Babcock, 40 F.4th 1172, 1177 (10th Cir. 2022). Especially on appeal effective counsel calls for dropping weaker arguments to focus on the few best ones for their client. Jones v. Barnes, 463 U.S. 745, 751-52 (1983). For the prejudice prong courts will generally review the record and evidence unimpacted by counsel's deficient performance to see if it would still support the result reached by the jury. See Frost v. Pryor, 749

F.3d 1212, 1227 (10th Cir. 2014); See also Bledsoe v. Bruce, 569 F.3d 1223, 1238 (10th Cir. 2009).

## ANALYSIS

### I.    THE COURT DISMISSES COUNT 1, DENIAL OF A CONTINUANCE.

Herrera contends this Court deprived him of a fair trial when it denied his two motions for a continuance after he was appointed a new attorney.   See Motion at 13-15.   Herrera raises this exact issue on direct appeal in Herrera, 51 F.4th at 1226.   The Tenth Circuit rejects his arguments and determines that the District Court does not abuse its discretion in declining to continue the trial.   Herrera, 51 F.4th at 1275-81.

As to Herrera's first request for a continuance, the Tenth Circuit holds: "In our view, the district court took a reasonable approach when Mr. Herrera had to change attorneys.   The court reasoned that because the trial was still two months away, Mr. Herrera's new legal team might have had enough time to prepare[]" and at no time did they inform the Court that a new trial date would be needed after it reviewed the case file.   Herrera, 51 F.4th at 1277.   As to the second request, which was based on the timeliness of the Government's disclosure of voluminous evidence, the Tenth Circuit finds that this Court appropriately reviews the relevant factors and reasonably concludes that they weighed against a continuance.   Herrera, 51 F.4th at 1278-81.

Because the Tenth Circuit Court of Appeals already addresses and disposes of the merits of the instant Count 1 on direct appeal, and there has been no apparent change in law to affect the appellate decision, Herrera is precluded from raising the same arguments again in his § 2255 Motion.   See United States v. Warner, 23 F.3d at 291 (refusing to consider issues under § 2255 that were "previously considered and disposed of . . . on direct appeal").

### II.    THE COURT DISMISSES COUNT 2, INEFFECTIVE ASSISTANCE OF COUNSEL FOR FAILURE TO ADDRESS THE COMMERCE CLAUSE.

In Count 2, Herrera argues he did "not know of the commerce clause" and his "attorneys failed in prep[p]ing his case." See Motion at 15. He appears to assert that his counsel was ineffective for failing to challenge the constitutionality of the VICAR clause and he should not have been penalized by the Tenth Circuit for failing to exhaust the issue in a pretrial motion because he "knew of no motion to file." See Motion at 15.

The Court understands Count 2 to be referencing the argument Herrera raises in his direct appeal in which he contended that the VICAR's "position clause," which prohibits racketeering activity to maintain or enhance one's position in the enterprise, was unconstitutional under the Commerce Clause. See Herrera, 51 F.4th at 1281. The Tenth Circuit declines to address this question, explaining that Herrera "waived the issue by failing to raise a pretrial challenge to the constitutionality of VICAR's position clause" and failed to show good cause for the waiver. Herrera, 51 F.4th at 1281, 1284-85.

When an issue is not considered on the merits of a direct appeal due to the Tenth Circuit's determination that it was waived, e.g., no pretrial motion was filed regarding the issue, the Petitioner in a § 2255 proceeding must "show ineffective assistance of counsel in order to establish good cause for being unable to raise this claim on his direct appeal." United States v. Rodriguez, No. CR 10-1007 JCH, 2014 WL 12787962, at *2 (D.N.M. June 26, 2014), report and recommendation adopted, No. CR 10-1007-JCH, 2014 WL 12787959 (D.N.M. Sept. 24, 2014).

Although Herrera does not raise the instant Commerce Clause issue in a pretrial motion within his underlying criminal case, three of his severed co-Defendants do submit a timely motion arguing that Congress exceeds its authority under the Commerce Clause for the reason that VICAR

criminalizes purely local, noneconomic conduct.[1]   See United States v. DeLeon, No. CR 15-4268 JB, 2020 WL 353856, at *95 (D.N.M. Jan. 21, 2020), aff'd in part, vacated in part, remanded sub nom. United States v. Garcia, 65 F.4th 1158 (10th Cir. 2023), opinion withdrawn and superseded on reh'g in part, 74 F.4th 1073 (10th Cir. 2023), and aff'd in part, vacated in part, remanded sub nom. United States v. Garcia, 74 F.4th 1073 (10th Cir. 2023).   The Court rejects the Commerce Clause argument on the merits and, on appeal, the Tenth Circuit, agrees that the VICAR's "position clause" is a facially constitutional exercise of Congress' Commerce Clause Power, and the record contains sufficient evidence that the violent acts performed by the moving Defendants affects interstate commerce and were in furtherance of the objectives of the enterprise.   See Garcia, 74 F.4th at 1089-93.

Consequently, Herrera cannot succeed on an ineffective assistance of counsel claim due to the failure of his attorney to raise a Commerce Clause challenge in a pretrial motion.   Herrera's severed co-Defendants raised the same issue in their direct appeal, and the Tenth Circuit rejects those argument on the merits.   Thus, Herrera fails to demonstrate the prejudice prong under Strickland, 466 U.S. 668, because even if his counsel argued the issue, it would have ultimately failed.   See United States v. Fisher, 38 F.3d 1144, 1147 (10th Cir. 1994)(holding that counsel's failure to raise meritless issue in underlying criminal case did not constitute ineffective assistance); Sperry v. McKune, 445 F.3d 1268, 1275 (10th Cir. 2006)(explaining that failure to raise a meritless claim does not constitute ineffective assistance of counsel).   Accordingly, the Court denies the Motion's Count 2 to vacate.

III.   THE COURT DISMISSES COUNT 3, DENIAL OF DUE PROCESS AND

---

[1] Herrera orally asks to join this motion *after* his trial was complete, but the Court did not grant or deny the request.   See Herrera, 51 F.4th at 1281.

**IMPROPER SEVERANCE.**

Herrera asserts two separate and unrelated arguments under Count 3.  See Motion at 15-16.  First, he claims that the "government[']s delay in producing information [] create[d] a denial of due process."  Motion at 15-16.  He does not identify what specific information was delayed or any other details.  Second, he argues "the district court [] commit[ed] reversible errors in delaying severance."  Motion at 16.

### A.  HERRERA'S DUE PROCESS CLAIM FAILS, BECAUSE THE TENTH CIRCUIT ADDRESS THE ARGUMENT ON DIRECT APPEAL.

As to the alleged due process violation, Herrera already argues this issue in his direct appeal.  See Herrera, 51 F.4th at 1242.  Specifically, he claims the government's failure to timely disclose two telephone recordings, the FBI's typed notes of an interview, and an FBI questionnaire qualifies as a denial of due process.  Herrera, 51 F.4th at 1242.  The Tenth Circuit reviews the content of each of these disclosures and determines they did not constitute a denial of due process to Herrera.  See Herrera, 51 F.4th at 1242-52.  Because the Tenth Circuit C already addresses and disposes of the merits of the due process argument in Count 3 on direct appeal, and there has been no change in law to affect the appellate decision, Herrera is precluded from raising the same arguments again in his § 2255 Motion.  See United States v. Prichard, 875 F.2d at 791 ("Absent an intervening change in the law of a circuit, issues disposed of on direct appeal generally will not be considered on a collateral attack by a motion pursuant to § 2255.")

### B.  HERRERA'S SEVERANCE CLAIM FAILS, BECAUSE HE FAILS TO RAISE IT ON DIRECT APPEAL.

As to the final argument, Herrera writes: "the district court did commit reversible errors in delaying sever[a]nce."  Motion at 16.  While Herrera and his co-Defendants raise severance issues in the direct appeal, see Herrera, 51 F.4th at 1260-76, none of those issues address the

timeliness or alleged delay of the District Court's determinations.   Thus, Herrera is asking this Court to address an issue that he could have raised on direct appeal but fails to raise.   Section 225 motions are not available to test the legality of matter which should have been raised on direct appeal, unless he can show: (i) cause to excuse his procedural default and actual prejudice resulting from the errors of which he complains; or (ii) that a fundamental miscarriage of justice will occur if his claim is not addressed.   See Warner, 23 F.3d at 291.   Here, the one sentence Herrera provides, regarding severance, does not show cause that excuses his procedural default; nor does Herrera attempt to explain the fundamental miscarriage that will occur if the Court does not address his claim.   See Motion at 16 ("The district court did commit reversible errors in delaying severance [sic].").   Accordingly, Herrera is procedurally barred from raising this argument in the instant motion to vacate, and the Court denies Count 3.

**IT IS ORDERED** that: (i) the Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (CIV Doc. 1; CR Doc. 3749), is dismissed with prejudice; (ii) the Court denies a Certificate of Appealability; and (iii) the Court will enter a Final Judgment disposing of this civil case.

_____
UNITED STATES DISTRICT JUDGE

*Parties and Counsel:*

Carlos Herrera
Santa Fe, New Mexico

    *Plaintiff pro se*

Maria Ysabel Armijo
  Assistant United States Attorney
United States Attorney's Office
Albuquerque, New Mexico

    *Attorneys for the Defendant*

- 11 -